IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOSE ALVARADO, on behalf of himself and others similarly situated | §<br>§<br>§ |
| v. | § CAUSE NO. 1:16-CV-464-LY |
| | § |
| CONN APPLIANCES, INC. | §<br>§<br>§ |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Conn Appliances, Inc.'s 12(b)(1) Motion to Dismiss, or, Alternatively, 12(b)(3) Motion to Dismiss Plaintiff's Amended Complaint, (Dkt. No. 13); Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. No. 16); and Defendants' Reply (Dkt. No. 19). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

**I. BACKGROUND**

Plaintiff Jose Alvarado filed this purported class action lawsuit against Conn Appliances, Inc. ("Conn") alleging that Conn's debt collection practices violate the Telephone Consumer Protection Act ("TCPA"). Alvarado's debts at issue arise from two contracts for purchases of certain products from Conn in August 2013. The contracts are identical and include arbitration clauses which provide in relevant part:

> You agree that any claim, dispute or controversy arising from or relating to this Agreement, including, but not limited to, disputes relating to any documentation governing your obligations under this Agreement, any claim, dispute, or controversy

> alleging fraud, misrepresentation, or other claim, whether under common law, equity, or pursuant to federal law, state, or local statute or regulation, any dispute relating to collection activities taken by Conn's, our affiliates, subsidiaries, agents, officers, employees, servicers, directors, or assigns regarding monies owed under this Agreement, or the scope and validity of this arbitration clause (including disputes as to the matters subject to arbitration), or the enforcement or interpretation of any other provision of this Agreement, shall be resolved by binding individual (and not class) arbitration . . . . This arbitration clause is an independent agreement and shall survive the  . . . transfer of this Agreement.

Dkt. No. 13-1 at 3. Conn later assigned the contracts to Conn Credit I, LP ("Credit"). Though Conn is no longer a party to the contracts, Conn states that it acts "as an agent and servicer for [Credit] in its attempts to collect on the Contracts." Dkt. No. 19, Exh. 1. Moreover, Conn and Credit "maintain a formal written agreement memorializing this relationship." *Id.*

Shortly after Alvarado filed suit, Conn moved to dismiss the lawsuit pursuant to the arbitration clause in the contract. Alvarado responds that Conn cannot enforce the arbitration clause, because it ceased being a party to the contract after the contract was assigned to Credit. Conn disagrees on the merits of Alvarado's reading of the contract, and the impact of the assignment of the agreement to Credit. Further, Conn argues that under the language of the contracts, gateway issues of arbitrability—including the issue raised by Alvarado—are for the arbitrator, so this Court should compel arbitration. The Court agrees.

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute that is the subject of the litigation. 9 U.S.C. § 3. As the Supreme Court has observed, "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler*

*Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625-26(1985) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221(1985)) (internal citations omitted). Thus, under the FAA, arbitration agreements are considered "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In deciding a motion to compel arbitration under the FAA, courts generally conduct a two-step inquiry. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). First, the court determines "whether the parties agreed to arbitrate the dispute in question." *Id.* at 258 (citations omitted). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* If the court finds at step one there is an agreement to arbitrate, then at step two the court considers "whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims." *Id.* (internal quotation marks and citations omitted). The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity, and the court must resolve all doubts concerning the arbitrability of claims in favor of arbitration. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004); *Mitsubishi Motors*, 473 U.S. at 626.

### III. ANALYSIS

Conn claims in its Motion to Dismiss that there is "clearly" a valid agreement to arbitrate between the two parties. Dkt. No. 13 at 6. Alvarado disagrees. Dkt. No.16 at 3. Alvarado contends that because Conn assigned the contract to Credit, Conn is no longer a party to the contract, and there is thus no agreement between Alvarado and Conn to arbitrate their dispute. There is a general presumption that issues of arbitrability are for a court, not an arbitrator, to resolve. *See First Options*

*of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995). However, where there is clear and unmistakable evidence that the parties intended to submit the issue of arbitrability to arbitration as well, the court must refer the question to the arbitrator. *Id.* at 944. The Fifth Circuit has recognized that incorporation of the AAA rules is enough to evidence a clear and unmistakable intent to arbitrate arbitrability, because those rules empower the arbitrator to determine whether an issue is arbitrable. *Petrofac, Inc. v. DyaMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). Here, the contract not only incorporates the AAA rules, but it also specifies that the arbitration clause applies to disputes regarding "the scope and validity of this arbitration clause (including disputes as to the matters subject to arbitration)." Dkt. No. 13-1 at 3. Thus, the language of this agreement appears to evidence a clear intent to submit disputes regarding arbitrability to arbitration.

However, when a non-party attempts to compel arbitration of gateway issues of arbitrability, courts require a further showing of a sufficiently close relationship between the party seeking to compel arbitration, and the party in whose shoes it seeks to stand. *See, e,g,, Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205 (2d Cir. 2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1st Cir. 1985). In *Apollo*, the question of whether a transfer validly assigned the right to compel arbitration was a question of "existence and validity" of the arbitration clause. 886 F.2d at 473. There, the court found that the relationship between the assignor and assignee was sufficiently close, so there was prima facie evidence of a valid arbitration clause between the parties. *Id.* Similarly, in *Contec*, the court looked to the relationship between the original signatory corporation and the predecessor in interest. 398 F.3d at 209-10. Because the relationship was sufficiently close, arbitration of the gateway issue of arbitrability was warranted. *Id.* Moreover, the court in *Contec* found it important

that—as is the case here—the party attempting to avoid arbitration was a signatory to the contract and had thus itself agreed to arbitrate. *Id.* at 211.

On the other hand, some courts refuse to delegate arbitration of the gateway jurisdictional issue when the relationship between the nonsignatory party and the signatory in whose shoes it attempts to stand is not comparable to that of *Apollo* or *Contec*. *See Qpro Inc. v. RTD Quality Serv. USA, Inc.*, 761 F. Supp. 2d 492, 497-98 (S.D. Tex. 2011) (distinguishing *Contec* by stating that the parent signatory and subsidiary nonsignatory were not "essentially equivalent"); *Celanese Corp. v. BOC Group PLC*, No. 3:06-CV-1462, 2006 WL3513633 (N.D. Tex. Dec. 6, 2006) (noting that *Apollo* and *Contec* had nonsignatories that "essentially stood in the shoes of a signatory"). In these cases, the courts found that because there was not a sufficiently close relationship, the nonsignatory could not compel arbitration of the gateway issues of arbitrability.

The first, and most important, fact in this case is that Conn *was* an original signatory of the contract, as it first signed the contract and then assigned the agreement to Credit after execution. Moreover, the arbitration clause states that it would survive the transfer of the agreement, so there is a reasonable argument that Conn remains a party to the arbitration clause—and thus, even after the assignment, is *not* a non-party to the agreement. Further, the relationship between Conn and Credit—the party in whose shoes Conn wishes to stand—is similar to the relationship of the entities in *Contec*. And, as in *Contec*, Conn continued to be involved with the contract by servicing it after it was assigned to Credit. *Contec*, 398 F.3d at 209. Lastly, Conn is attempting to compel arbitration against Alvarado, who is a signatory to the contract. *Id.* at 211. From theses facts, the Court finds that the relationship between Conn and Credit, is sufficiently close to warrant enforcing the portion

of the arbitration clause that delegates to the arbitrator the jurisdiction to resolve whether the dispute between Conn and Alvarado is subject to arbitration.

The Fifth Circuit has held that "the weight of authority clearly supports dismissal of a case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Although dismissal is discretionary, because all of the issues presented in this case are subject to arbitration, the proper exercise of that discretion here would be to dismiss the case.

## IV.  RECOMMENDATION

Based upon the foregoing, the Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss (Dkt. No. 13) and **ORDER** the Parties to proceed to arbitration.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466,

472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 17th day of November, 2016.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE